**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PETER DIXON,                                    No. C-12-05207 DMR

         Plaintiff,                         **ORDER GRANTING IN PART**
                                            **PLAINTIFF'S MOTION FOR**
         v.                                 **ATTORNEYS' FEES**

CITY OF OAKLAND, ET AL.,

         Defendants.
_____/

     Plaintiff Peter Dixon brought this civil rights action following a December 2011 incident in which he was confronted by four private security guards, involved in an altercation, handcuffed, subjected to a citizen's arrest, and cited by the Oakland police. Plaintiff sued Defendants City of Oakland and the Oakland Police Department ("OPD") and five individually-named Oakland police officers ("Oakland Defendants"), as well as private security company Personal Protective Services, Inc. ("PPS") and five of its employees, Demont Marrow, Stanley Teets, Meredith Wilson, Rene Garcia, and LaDale Slocum ("PPS Defendants"). Plaintiff brought various Section 1983 and state law claims against the Oakland Defendants. As to the PPS Defendants, Plaintiff brought claims for violation of the Bane Act, California Civil Code section 52.1; negligence; assault and battery; and false arrest and imprisonment. [Docket No. 34 (Am. Compl.)]

     In May 2014, the parties reached a settlement of all of Plaintiff's claims. On May 30, 2014, the parties filed a stipulation and proposed order to settle the case and vacate the trial and pretrial

dates, reserving the determination of Plaintiff's claim for attorneys' fees as to the PPS Defendants for the court. [Docket No. 83.] On June 2, 2014, the court entered an order on the parties' stipulation and set a briefing and hearing schedule for Plaintiff's fee motion. [Docket No. 84 (Stipulation and Order of Settlement).] Plaintiff subsequently filed the present motion for an award of attorneys' fees against the PPS Defendants, requesting a total fee award of $375,225.30, including a 30% lodestar enhancement for work on the merits. [Docket Nos. 86 (Pl.'s Mot.), 94 (Pl.'s Reply) Am. App. A.] The PPS Defendants oppose the motion. [Docket No. 93 (Defs.' Opp'n).] The court held a hearing on October 30, 2014. For the following reasons, the court GRANTS Plaintiff's motion in part and awards $316,572.10.

**I. Factual and Procedural Background**

On October 9, 2012, Plaintiff filed a complaint against the Oakland Defendants, PPS, Defendant Marrow, and ten Doe Defendants. In his complaint, Plaintiff alleged the following facts: on December 9, 2011, at around 5:00 p.m., Plaintiff went jogging in his West Oakland neighborhood. While jogging through a housing project, Plaintiff was surrounded by what appeared to be two unmarked police cars. (Compl. ¶¶ 21, 22.) Without identifying themselves, three men exited the cars and approached Plaintiff. (Compl. ¶¶ 23, 24.) Defendant Marrow demanded that Plaintiff come to him, and then accused Plaintiff of having thrown drugs on the ground and asked him why he was running. Plaintiff denied throwing drugs on the ground and informed Marrow that he resided in the neighborhood. (Compl. ¶ 25.) Plaintiff alleges that Marrow then shoved Plaintiff with force, and Plaintiff fell backwards onto a fence. Marrow and the two other men converged on Plaintiff, and Plaintiff rebounded from the fence and pushed Marrow into the side of a car. (Compl. ¶¶ 26, 27.) The other men then grabbed Plaintiff from behind and began forcefully pulling his arms and pushed and punched Plaintiff, slamming his head into the car. They eventually handcuffed him, searched him, and placed him in the backseat of one of the cars. (Compl. ¶¶ 29-31.) A fourth man approached the car and again accused Plaintiff of possessing drugs. (Compl. ¶ 32.) Unbeknownst to Plaintiff, the four men were security guards for Defendant PPS, which is contracted to provide security at the housing project where the incident took place.

1   Approximately 30 minutes later, with Plaintiff still handcuffed in the backseat of a car, three

2   OPD officers arrived on the scene. (Compl. ¶ 35.) They subsequently informed Plaintiff that they

3   were placing him under citizen's arrest based on Plaintiff's alleged battery of Defendant Marrow.

4   (Compl. ¶¶ 38, 43.) The OPD officers removed Plaintiff from the security guards' car and placed

5   him, still handcuffed, in the back of their police car. (Compl. ¶¶ 40, 41.) They then drove him home

6   and issued Plaintiff a citation for misdemeanor battery on Defendant Marrow. (Compl. ¶¶ 41-43.)

7   Plaintiff later went to an emergency room where he was diagnosed with numerous injuries,

8   including a fractured wrist. (Compl. ¶ 55.)

9   In his complaint, Plaintiff brought Section 1983 claims against the Oakland Defendants for

10  false arrest, as well as a Bane Act claim (California Civil Code section 52.1) and a claim for

11  negligence. As to PPS, Marrow, and the Doe Defendant security guards, Plaintiff alleged claims for

12  violation of the Bane Act, negligence, assault and battery, and false arrest and imprisonment.

13  Plaintiff's Bane Act claim against PPS, Marrow and the Doe Defendants was based upon the

14  following rights: 1) "[t]he right to be free from unreasonable searches and seizures," based on the

15  Fourth and Fourteenth Amendments to the U.S. Constitution; 2) "[t]he right to enjoy and defend life

16  and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness and

17  privacy," based on the California Constitution, Article 1, Section 1; 3) "[t]he right to be free from

18  unlawful and unreasonable seizure of one's person," based on the California Constitution, Article 1,

19  Section 13; 4) "[t]he right to protection from bodily restraint, harm, or personal insult," based upon

20  California Civil Code section 43[1]; and 5) "[t]he right to be free from excessive and unreasonable

21  force in the course of arrest or detention," based on the Fourth and Fourteenth Amendments to the

22  U.S. Constitution and by the California Constitution, Article 1, Section 13. (Compl. ¶¶ 73, 74.)

23  After service of the complaint, Defendants PPS and Marrow failed to file an answer, and the

24  Clerk entered their default on January 29, 2013. [Docket No. 14.] PPS and Marrow moved to set

25  aside the default, which Plaintiff opposed. [Docket Nos. 16, 21.] The court granted the motion to

26  _____

27  [1] California Civil Code section 43 states "[b]esides the personal rights mentioned or recognized in the Government Code, every person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations." Cal. Civ. Code § 43.

28

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    set aside default on March 25, 2013.  [Docket No. 27.]  On June 19, 2013, Plaintiff filed an amended

2    complaint, naming additional PPS Defendants Teets, Wilson, Garcia, and Slocum.  (Am. Compl.)

3    His state law claims against the PPS Defendants remained unchanged.

4         The court set the case for trial to begin on July 7, 2014 and the parties proceeded with

5    discovery.  The parties attended a settlement conference with Magistrate Judge Nathanael Cousins

6    on February 13, 2014 but the case did not settle.  The court heard oral argument on the Oakland

7    Defendants' motion for summary judgment on April 24, 2014, and on April 28, 2014, the parties

8    attended a private mediation before the Honorable James Larson (ret.).  The case did not settle on

9    that date, but the parties continued negotiating.  On May 30, 2014, one week before pretrial

10   submissions were due, the parties filed a stipulation and request for order settling the case, asking

11   the court to vacate the trial and pretrial dates.  On June 2, 2014, the court entered an order on the

12   parties' stipulation and set a briefing and hearing schedule for Plaintiff's fee motion.  Pursuant to the

13   parties' stipulation, Plaintiff settled his claims against the Oakland Defendants for $25,000.  As to

14   the PPS Defendants, the parties' stipulation provided, in relevant part, as follows:

15        Plaintiff Peter Dixon and Defendants Personal Protective Services, Inc., Stanley
          Teets, Demont Marrow, Meredith Wilson, Rene Garcia, and LaDale Slocum agree
16        to settle all of Plaintiff's claims for damages pending against them for the total
          award of One Hundred, Ten Thousand Dollars ($110,000), with Plaintiff's claims
17        for reasonable attorneys' fees related to such claims, including Plaintiff's Bane Act
          claim (California Civil Code § 52.1), to be resolved by motion to this Court, The
18        Honorable Donna M. Ryu.

19   (Stipulation and Order to Settle 2.)

20        Plaintiff now moves pursuant to subsection (h) of the Bane Act, California Civil Code

21   section 52.1(h), for a total fee award of $375,225.30 against the PPS Defendants.

22                              **II.  Legal Standard**

23        The Bane Act provides that "[i]n addition to any damages, injunction, or other equitable

24   relief awarded in an action brought pursuant to subdivision (b), the court may award the petitioner or

25   plaintiff reasonable attorney's fees."  Cal. Civ. Code § 52.1(h).  California law governs the method

26   of calculating attorneys' fees awarded under state law.  *Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d

27   1470, 1478 (9th Cir. 1995).  Courts apply the lodestar method for calculating reasonable attorneys'

28   fees, which is based on the reasonableness of both the time spent and the hourly rate.  *See Graham v.*

United States District Court

For the Northern District of California

*DaimlerChrysler Corp.*, 34 Cal.4th 553, 579 (2004).  The lodestar is considered "the basic fee for comparable services in the community," *id.*, and under California law, may be adjusted by the court based on several factors.  *Ketchum v. Moses,* 24 Cal. 4th 1122, 1132 (2001) (citing *Serrano v. Priest,* 20 Cal. 3d 25, 49 (1977)).  These factors include "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award."  *Id.*  (citation omitted).  The California Supreme Court has explained that "[t]he purpose of such adjustment is to fix a fee at the fair market value for the particular action.  In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market value for such services."  *Id.* at 1132-33 ("purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights . . . into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis"); *see Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1112 (9th Cir. 2014) ("[u]nlike federal law, California law allows for a multiplier of the lodestar to compensate for the risk of contingent representation").

### III.  Analysis

### A.    Plaintiff's Entitlement to Attorneys' Fees

The PPS Defendants challenge Plaintiff's entitlement to attorneys' fees under the Bane Act.  First, they argue that the Bane Act does not permit recovery of attorneys' fees against a private party.  Second, they argue that California Civil Code section 52.1(h), the Bane Act's attorneys' fees provision, does not apply because the settlement of Plaintiff's Bane Act claim does not amount to an "award" of damages.  The court will address each argument in turn.

### 1.    Applicability of the Bane Act to Private Defendants

The Bane Act authorizes an action for damages, injunctive relief, and other "appropriate equitable relief" against a person or persons who, "whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured" by the

**United States District Court**
For the Northern District of California

1   federal or state law and the United States or California constitutions.  Cal. Civ. Code § 52.1(a), (b).

2   "The word 'interferes' as used in the Bane Act means 'violates.'"  *Austin B. v. Escondido*

3   *Union Sch. Dist.*, 149 Cal. App. 4th 860, 883 (2007) (citing *Jones v. Kmart Corp.*, 17 Cal. 4th 329,

4   334 (1998)).  "The essence of a Bane Act claim is that the defendant, by the specified improper

5   means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing

6   something he or she had the right to do under the law or to force the plaintiff to do something that he

7   or she was not required to do under the law."  *Id.*  Here, Plaintiff's Bane Act claim against the PPS

8   Defendants was based upon his state and federal constitutional rights to 1) "be free from

9   unreasonable searches and seizures"; 2) "enjoy and defend life and liberty; acquire, possess, and

10  protect property; and pursue and obtain safety, happiness and privacy"; 3) "be free from unlawful

11  and unreasonable seizure of one's person"; 4) "protection from bodily restraint, harm, or personal

12  insult"; and 5) "be free from excessive and unreasonable force in the course of arrest or detention."

13  (Am. Compl. ¶¶ 78, 79.)

14         The PPS Defendants argue that the Bane Act is a civil rights statute that is applied to

15  governmental entities, with very few exceptions, citing *Jones*.  In *Jones*, the plaintiff was detained

16  and searched by a store's employees on suspicion of shoplifting, and was injured in a struggle.  The

17  employees later determined that he had not shoplifted anything.  17 Cal. 4th at 331-32.  A jury

18  returned a verdict for the plaintiff on his Bane Act claim, which "stated in effect that defendants' use

19  of excessive force and their illegal search of [plaintiff] interfered with his state and federal

20  constitutional rights," and awarded him damages.  *Id.* at 332.  He also recovered attorneys' fees.  *Id.*

21  The court of appeals eliminated the fee award and damages for interference with plaintiff's

22  constitutional rights, and the California Supreme Court affirmed.  The court noted that the plaintiff

23  "produced no evidence that defendants *interfered with* [plaintiff's] rights against unreasonable

24  search and seizure," and that "[w]hen they assert[ed] that defendants interfered with those rights by

25  directly violating them, they [were] mistaken: Only the government or its agents can do so."  *Id.* at

26  334 (emphasis added).  Accordingly, the court held that while a Bane Act claim may be asserted

27  against private individuals as well as state actors, a violation requires "an attempted or completed act

28  of interference with a legal right, accompanied by a form of coercion."  *Id.* at 334.  In other words,

1    because a constitutional violation can only be committed by a state actor, such separate conduct on

2    the part of a state actor is necessary for a Bane Act claim based upon constitutional rights against a

3    private individual.  No such conduct was present in *Jones*; instead, the plaintiff asserted that the

4    private actor-defendants interfered with his constitutional rights by *directly violating them.  See id.*

5    (citing, as example of private party who would be subject to suit under section 52.1, individual who

6    "threatened to injure the [plaintiff] if she did not . . . consent to an official and warrantless search of

7    her premises.").

8            The PPS Defendants argue that *Jones* applies to bar Plaintiff's Bane Act claim because

9    "there was no coercion between the PPS Defendants and the OPD," stating that the PPS Defendants

10   "performed a citizen's arrest on Mr. Dixon for battery prior to any involvement of a government

11   actor (OPD)."  (Defs.' Opp'n 10.)  This misapprehends the nature of Plaintiff's claims against the

12   PPS and Oakland Defendants.  Here, Plaintiff alleges that the PPS Defendants beat and restrained

13   him, keeping him handcuffed and locked in their vehicle until the OPD arrived on the scene.  He

14   further alleges that Defendant Marrow then lied to the OPD regarding Plaintiff's battery of Marrow,

15   *causing* Plaintiff's allegedly unlawful detention and arrest by OPD officers.  (*See* Am. Compl. ¶¶ 56

16   ("Defendants arrested Plaintiff based on a purported citizens's arrest when Defendants lacked

17   probable cause and other legal authority to arrest Plaintiff."), 57 (OPD "effectuated [PPS

18   Defendants'] citizen's arrest of Plaintiff without conducting any independent investigation of this

19   incident and failed to establish independent probable cause to effectuate the citizen's arrest").)

20   Therefore, Plaintiff's Bane Act claim is based upon his allegations that the PPS Defendants

21   interfered "by threats, intimidation, or coercion" with Plaintiff's right to be free from unlawful arrest

22   by handcuffing and detaining him and wrongfully causing the OPD to arrest him.  *See, e.g., Duncan*

23   *v. Cnty. of Sacramento*, No. 2:06-cv-0647-GEB-DAD, 2008 WL 539944, at *5 (E.D. Cal. Feb. 25,

24   2008) (denying summary judgment where plaintiffs "presented evidence that [county employee]

25   violated their Fourth Amendment rights by causing CHP officers to effectuate an unconstitutional

26   stop of [p]laintiffs' vehicle" and that the interference was accompanied by intimidation as defendant

27   "nearly ramm[ed] the bumper of [plaintiffs'] car" several times); *Lutz v. CBRE Group, Inc.*, No.

28   3:12-CV-2625-JM (DHB), 2013 WL 4102157, at *4-5 (S.D. Cal. Aug. 13, 2013) (allowing Bane

1    Act claim to proceed against private party defendant who initiated allegedly wrongful citizen's

2    arrest of plaintiff, interfering with plaintiff's First and Fourth Amendment rights).  Accordingly,

3    *Jones* does not bar Plaintiff's Bane Act claim against the PPS Defendants.

4          Additionally, Plaintiff's claim is premised upon other rights which provide additional bases

5    for liability under the Bane Act.  His claim is based in part upon on California Civil Code section 43,

6    which provides that "every person has . . . the right of protection from bodily restraint or harm, from

7    personal insult, from defamation, and from injury to his personal relations."  Cal. Civ. Code § 43.

8    (*See* Am. Compl. ¶ 78(d).)  Plaintiff alleged state law torts of false arrest and battery against the PPS

9    Defendants, which implicate Plaintiff's Section 43 right to be free "from bodily restraint or harm."

10   Plaintiff's claim is also based upon a violation of California Constitution, Article 1, Section 1, which

11   provides that "[a]ll people . . . have inalienable rights . . . [including] enjoying and defending life

12   and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety,

13   happiness and privacy."  Cal. Const., art 1, § 1.  Plaintiff alleges that the PPS Defendants violated

14   his rights to enjoy and defend life and liberty based upon their actions in detaining him and causing

15   his arrest.   These claims provide additional bases for liability under the Bane Act.  *See Bolbol v.*

16   *City of Daly City*, Nos. C-09-1944 EMC, C-09-5318 EMC, 2011 WL 3156866, at *7 (N.D. Cal. July

17   26, 2011) (allowing Bane Act claims against private party defendants based upon violation of

18   Section 43 right of protection from bodily restraint or harm and California Constitution right to

19   liberty related to allegedly false arrest initiated by defendants).

20          **2.    Plaintiff's Award of Damages**

21          The PPS Defendants next argue that Plaintiff is not entitled to attorneys' fees pursuant to

22   California Civil Code section 52.1(h), which provides that a court may award a plaintiff reasonable

23   attorneys' fees "[i]n addition to any damages . . . awarded in an action brought pursuant to" section

24   52.1(b), because Plaintiff was never awarded damages.  Instead, the parties negotiated a settlement

25   and release in which Plaintiff recovered a "monetary payment."  (Defs.' Opp'n 4.)  According to the

26   PPS Defendants, the negotiated payment does not amount to an "award" of "damages" as those

27   terms are used in section 52.1(h).

28

United States District Court

For the Northern District of California

The PPS Defendants' argument is not persuasive.  The Stipulation and Order of Settlement expressly provides that Plaintiff and the PPS Defendants "agree to settle all of Plaintiff's claims for *damages* against them for the total *award*" of $110,000, "with Plaintiff's claims for reasonable attorneys' fees related to such claims, including Plaintiff's Bane Act claim (California Civil Code § 52.1), to be resolved by motion to this Court."  (Stipulation and Order of Settlement 2 (emphasis added).)  Thus, by the plain terms of the Stipulation and Order, the PPS Defendants agreed that Plaintiff had recovered an "award" of "damages."  *See, e.g., Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1136 (9th Cir. 2002) (describing $10,000 negotiated for plaintiff in settlement of ADA claim as "money damages" and a "monetary award").

The PPS Defendants also claim that Plaintiff drafted the language of the stipulation "in an attempt to make it look as though the terms of the settlement were an award of damages," arguing that the "clear language of the settlement and release agreement, the binding and controlling document here, does not support" Plaintiff's argument.  (Defs.' Opp'n 11.)  This argument, too, is unpersuasive.  Paragraph 6 of the parties' settlement agreement provides, in relevant part, that "PLAINTIFF'S claims for reasonable attorneys' fees, including Plaintiff's Bane Act Claim (California Civil Code § 52.1), shall be resolved by motion . . . *as stipulated and ordered by the Court in court docket no. 84, incorporated herein*."  (Haddad Decl., Aug. 1, 2014 ("Haddad Decl. II"), Ex. 6 (emphasis added).)  Therefore, the parties' agreement specifically incorporates the terms of the June 2, 2014 Stipulation and Order of Settlement.  *See Khavarian Enters., Inc. v. Commline, Inc.*, 216 Cal. App. 4th 310, 320 (2013) (noting that "in negotiating a settlement, parties to litigation are free to agree to the standards and procedures to which they wish to adhere regarding recovery of attorney fees and costs").  The court concludes that by the express terms of the Stipulation and Order of Settlement, Plaintiff recovered an award of damages.

In sum, the court finds that Plaintiff has established that he is eligible for an award of reasonable attorneys' fees pursuant to section California Civil Code section 52.1(h).[2]  Moreover, the

---

[2] The PPS Defendants also argue that Plaintiff has failed to establish his entitlement to attorneys' fees pursuant to California Code of Civil Procedure section 1021.5.  The court need not reach this argument as Plaintiff does not move for an award of fees under that provision.

**United States District Court**
For the Northern District of California

1  PPS Defendants have failed to establish "special circumstances" that would render a fee award

2  "unjust."  *See Serrano v. Unruh*, 32 Cal. 3d 621, 632 (1982) (holding that "unless special

3  circumstances would render such an award unjust," "parties who qualify for a fee should recover for

4  all hours reasonably spent, including those on fee-related matters.")  Accordingly, the court must

5  determine whether the amount of fees sought is reasonable.

6  **B.      Reasonable Attorneys' Fees**

7         Before calculating a reasonable fee award, the court must address a threshold issue

8  concerning the amount of the award.  The PPS Defendants argue that attorneys' fees must be

9  reasonable in relation to the results obtained.  They assert that the final amount Plaintiff received in

10  settlement is significantly below the amount he initially sought, and describe Plaintiff's demands

11  during the February 2014 settlement conference before Judge Cousins and his revised demand in

12  March 2014.  According to the PPS Defendants, Plaintiff's $110,000 settlement cannot be seen as a

13  substantial victory or excellent results, and therefore they ask the court to reduce Plaintiff's fee

14  award by an unspecified amount.

15         First, the court strenuously admonishes the parties for disclosing confidential information

16  regarding the parties' positions in their settlement discussions.  Not only do the PPS Defendants

17  specifically identify Plaintiff's settlement positions in their brief (Defs.' Opp'n 17), they attach as

18  exhibits Plaintiff's confidential settlement conference statement and mediation brief.  (Defs.' Opp'n

19  Exs. B, C.)  Plaintiff, too, sets forth the PPS Defendants' settlement positions in his opening and

20  reply briefs.  (Pl.'s Mot. 8; Haddad Decl., June 27, 2014, ¶ 34; Haddad Decl. II ¶¶ 4, 5.)  These

21  actions violate not only Judge Cousins's Settlement Conference Standing Order, which provides that

22  settlement conference statements "must not be filed in ECF," (Docket No. 23-1), they violate the

23  ADR Local Rules.  ADR Local Rule 7-5(a) provides that "the contents of any written settlement

24  conference statements, anything that happened or was said, any position taken, and any view of the

25  merits of the case expressed by any participant in connection with any settlement conference" shall

26  be treated as "confidential information" and shall not be "[d]isclosed to anyone not involved in the

27  litigation . . . [d]isclosed to the assigned judge; or . . . [u]sed for any purpose . . . in any pending or

28  future proceeding in this court."  ADR Local Rule 6-12(a) contains a similar provision regarding

United States District Court
For the Northern District of California

1    written mediation statements.  *See* ADR L.R. 6-12(a) ("the contents of the written Mediation

2    Statements, anything that happened or was said, any position taken, and any view of the merits of

3    the case expressed by any participant in connection with any mediation" shall be treated as

4    "confidential information" and shall not be "[d]isclosed to anyone not involved in the litigation . . .

5    [d]isclosed to the assigned judge; or . . . [u]sed for any purpose . . . in any pending or future

6    proceeding in this court.").  Neither party argued that the exceptions to confidentiality listed in the

7    ADR Local Rules apply here, and none appear to apply in these circumstances.  *See* ADR L.R. 7-

8    5(b), 6-12(b).  **Accordingly, the court will not consider the parties' arguments regarding their**

9    **positions in settlement in relation to the final settlement amount, and hereby strikes the**

10   **parties' briefs, including Exhibits B and C to Defendants' opposition, as well as Haddad's**

11   **June 27 and August 1, 2014 declarations from the docket (Docket Nos. 86, 89, 93, 93-2, 93-3,**

12   **94, 96).  The parties shall re-file the offending documents excised of reference to confidential**

13   **settlement communications within seven days of this order.**

14        As for the merits of the PPS Defendants' argument that Plaintiff's attorneys' fee award

15   should be reduced based upon its relation to the results obtained, the court notes that the PPS

16   Defendants cited only cases applying federal law in support of their position.  (*See* Defs.' Opp'n 16-

17   17 (citing *McCown v. City of Fontana*, 565 F.3d 1097, 1104 (9th Cir. 2008); *Corder v. Brown*, 25

18   F.3d 833, 836-37 (9th Cir. 1994); *McGinnis v. Kentucky Fried Chicken*, 51 F.3d 805, 810 (9th Cir.

19   1994).)[3]  However, Plaintiff's attorneys' fee claim against the PPS Defendants is based upon

20   _____

21        [3] In two of these three cases, the courts analyzed under 42 U.S.C. § 1988 the appropriateness
     of fee awards that exceeded the damages awards by tenfold.  *See McCown*, 565 F.3d at 1101, 1103-04
22   (vacating $200,000 attorneys' fee award where plaintiff received $20,000 in damages in settlement);
     *Corder*, 25 F.3d at 836-37 (vacating $240,695 fee award where jury awarded plaintiffs $24,006 in
23   compensatory and punitive damages).  In the third case, the Ninth Circuit applied federal law in an
     action brought under Washington state law, and vacated a jury's punitive damages award leaving the
24   plaintiff with a $34,000 damages award.  *McGinnis*, 51 F.3d at 808 ("The Washington Supreme Court
     has held that 'we look to federal authority for guidance' in resolving issues of reduction in fees for
25   circumstances not mentioned in the statute [Washington Revised Code § 49.60.03(2)]." (citation
     omitted)).  The court vacated the $148,000 attorneys' fee award, holding that the trial court had abused
26   its discretion "by expressly refusing to relate the extent of success to the amount of the fee award."  *Id.*
     (citing *Farrar v. Hobby*, 506 U.S. 103, 115-16 (1992)).
27        Even if federal law applied to Plaintiff's fee request, "nothing in either [*McGinnis* or *Farrar*]
     . . . *requires* a district court to make an express reduction in the figure requested by [Plaintiff] simply
28   because of a disparity between the damages alleged" and those awarded.  *Weston v. City of Los Angeles*,
     99 F.3d 1148, at *2 (9th Cir. 1996) (emphasis added)

United States District Court

For the Northern District of California

1   California law; thus, these cases are inapposite.  *See Mangold*, 67 F.3d at 1478 (California law

2   governs the method of calculating attorneys' fees awarded under state law).

3         California law permits a court to exercise its discretion to reduce a fee award based on the

4   "success or failure" of the litigation.  *See Beaty v. BET Holdings, Inc.*, 222 F.3d 607, 610 (9th Cir.

5   2000) (citing *PLCM Group, Inc. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000)); *Ketchum*, 24 Cal. 4th at

6   1138 ("[t]o the extent a trial court is concerned that a particular award is excessive, it has broad

7   discretion to adjust the fee downward or deny an unreasonable fee altogether").  However, the Ninth

8   Circuit has noted that, with respect to civil rights cases, lodestar reductions for results obtained

9   should only occur "in the unusual case in which there are special circumstances [which] render such

10  an award–that is, an award of the full lodestar for all hours reasonably spent–unjust." *Beaty*, 222

11  F.3d at 612 (alteration in original) (citing *Vo v. Las Virgenes Mun. Water Dist.*, 79 Cal. App. 4th

12  440, 446 (2000) (quotation marks omitted)).  This is due to the importance of the rights underlying

13  such lawsuits:

14        This high threshold for triggering decreases due to limited success reflects the values
          underlying the award of attorneys' fees in FEHA and other civil rights cases.  Such
15        cases vindicate important public interests whose value transcends the dollar amounts
          that attach to many civil rights claims.  Fee awards ensure that neither financial
16        imperatives nor market considerations raise an insurmountable barrier that prevents
          attorneys from litigating meritorious cases, and even a relatively small damages
17        award "contributes significantly to the deterrence of civil rights violations in the
          future." *City of Riverside v. Rivera*, 477 U.S. 561, 575, 106 S.Ct. 2686, 91 L.Ed.2d
18        466 (1986).

19  *Beaty*, 222 F.3d at 612; *see also Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209-10 (9th Cir.

20  2013) ("[i]t is not per se unreasonable for attorneys to receive a fee award that exceeds the amount

21  recovered by their clients," which is "especially true in civil rights cases, where the dollar amount

22  lawyers recover for their clients is not the sole measure of the results the prevailing parties'

23  attorneys obtained.").

24         Here, the court declines to exercise its discretion to reduce Plaintiff's fee award based upon

25  a disparity in the amount of fees requested and the amount awarded Plaintiff in settlement.  Plaintiff

26  requests an unadjusted fee award of $242,746 for work performed by his attorneys on the merits of

27  his case, which is over double the $110,000 in damages awarded Plaintiff in settlement by the PPS

28  Defendants.  This case resulted in substantial success for Plaintiff and vindicated important rights

United States District Court

For the Northern District of California

1 related to alleged misconduct by private security companies. *See Gonzales*, 729 F.3d at 1210

2 ("Attorneys who 'win[] a civil rights claim' not only benefit their client in terms of the amount of

3 money they recover, 'they also confer benefits on others throughout society' by, for example, ending

4 institutional civil rights abuses or clarifying standards of constitutional conduct." (citations

5 omitted)).

6          **1.       Lodestar Calculation**

7          As Plaintiff is entitled to attorneys' fees, the court must calculate the lodestar, "using the

8 reasonable rate for comparable legal services in the local community for noncontingent litigation of

9 the same type, multiplied by the reasonable number of hours spent on the case." *Nichols v. City of*

10 *Taft*, 155 Cal. App. 4th 1233, 1242-43 (2007) (emphasis removed).

11               **a.       Reasonable Hourly Fees**

12          Plaintiff was represented in this matter by the law firm Haddad & Sherwin.  He seeks hourly

13 rates of $725 for partner Michael Haddad, lead counsel, and $695 per hour for Julia Sherwin, also a

14 partner.  (Haddad Decl., ¶ 54; Sherwin Decl., June 27, 2014, ¶ 20.)  Plaintiff seeks hourly rates of

15 $325, $350, and $400 for associates with two, three, and five years of experience, respectively.

16 (Sherwin Decl. ¶ 20.)  Plaintiff also seeks $225 per hour for paralegals.  (Sherwin Decl., ¶ 20.)  In

17 addition, Plaintiff seeks an hourly rate of $750 for Richard Pearl, who prepared Plaintiff's fee

18 motion.  (Pearl Decl., June 27, 2014, ¶ 8.)  The PPS Defendants argue that the rates requested by

19 Plaintiff's counsel and paralegals are excessive.  They do not challenge the hourly rate sought for

20 Mr. Pearl for work in connection with this motion.

21          To determine an attorney's reasonable hourly rate, courts consider "the hourly prevailing rate

22 for private attorneys in the community conducting *noncontingent* litigation of the same type."

23 *Ketchum*, 24 Cal. 4th at 1133; *see also Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740,

24 783 (2010) (courts consider whether "the hourly rates . . . are within the range of reasonable rates

25 charged by and judicially awarded comparable attorneys for comparable work.").  The moving party

26 bears the burden "to prove the appropriate market rate to be used in calculating the lodestar."

27 *MBNA Am. Bank, N.A. v. Gorman*, 147 Cal. App. 4th Supp. 1, 16 (2006).  To support a fee request,

28 the moving party may submit expert witness testimony regarding attorneys' fees and declarations

1    containing "verifiable information regarding rates allowed by courts." *Children's Hosp.*, 97 Cal.

2    App. 4th at 782-83.  In "assessing a reasonable hourly rate, the trial court is allowed to consider the

3    attorney's skill as reflected in the quality of the work, as well as the attorney's reputation and

4    status." *Gorman*, 147 Cal. App. 4th Supp. at 13 (citing *Ketchum*, 24 Cal. 4th at 1139)).

5         In support of the requested rates, Plaintiff submits the declarations of Mr. Haddad and Ms.

6    Sherwin, as well as attorneys Richard Pearl, John L. Burris, James C. Sturdevant, and Matthew D.

7    Davis.  Mr. Haddad states that he was admitted to the Michigan Bar in 1991 and the California Bar

8    in 1997, and has been a practicing civil rights lawyer for 23 years.  (Haddad Decl. ¶¶ 3-5.)  He

9    describes his extensive trial experience and success trying and settling civil rights actions.  (Haddad

10   Decl. ¶¶ 6, 9-12.)  He has specialized in civil rights and police misconduct law for his entire legal

11   career, and regularly teaches, lectures, and presents on civil rights issues.  (Haddad Decl. ¶¶ 7, 8.)

12   Since 2009 Mr. Haddad has been the president of the National Police Accountability Project

13   (NPAP), an national organization of lawyers and others who handle police misconduct cases.

14   (Haddad Decl. ¶ 7.)  Ms. Sherwin has practiced in the area of civil rights for 19 years.  (Sherwin

15   Decl. ¶¶ 24-27.)  She is active in the civil rights community, having served on the board of NPAP

16   since 2008, and regularly speaks at seminars for practitioners and students.  (Sherwin Decl. ¶¶ 32-

17   34, 36-38.)  Ms. Sherwin also sets forth the qualifications of Haddad & Sherwin's current and

18   former associates, Genevieve Guertin, Gina Altomare, and Thomas Kennedy Helm.  Ms. Guertin is

19   a fifth-year associate and graduate of Hastings College of the Law.  (Sherwin Decl. ¶ 6.)  Ms.

20   Altomare is a 2010 Hastings graduate, and Mr. Helm is a 2011 graduate of Golden Gate University

21   School of Law.  (Sherwin Decl. ¶¶ 7, 8.)

22        Each of the four attorneys who submit declarations in support of Plaintiff's fee motion have

23   practiced law in this District for many years.  Mr. Pearl has practiced law in California since 1971.

24   (Pearl Decl. ¶ 2.)  He specializes in issues involving court-awarded attorneys' fees and has extensive

25   experience in that area.  His testimony on the reasonableness of attorneys' fees has been favorably

26   cited in a number of cases, and he has successfully handled four cases in the California Supreme

27   Court involving fees.  (Pearl Decl. ¶¶ 4-6.)  In his declaration, Mr. Pearl explains that his current rate

28   is $750 per hour, and that he currently has numerous clients paying his market rate fees.  (Pearl

United States District Court
For the Northern District of California

Decl. ¶ 8.)  His current rate was recently found reasonable for fee motion work in *Cornell v. City & County of San Francisco*, San Francisco Superior Court Case No. CGC-11-509240.  (Pearl Decl. ¶ 8.)  Mr. Pearl sets forth a list of 38 law firms based or practicing in California whose stated hourly rates are equal to or higher than the rates charged by Plaintiff's counsel.  (Pearl Decl. ¶ 12.)  These rates are non-contingent rates, charged where full payment is expected upon billing and without consideration of factors other than hours and rates.  (Pearl Decl. ¶ 16.)  He also lists rates found reasonable by state and federal courts in California since 2010.  (Pearl Decl. ¶ 13.)

Mr. Burris has practiced law in California since 1976.  (Burris Decl., June 11, 2014, ¶ 2.)  More than 90% of his work involves civil rights, and he has considerable experience trying and settling civil rights cases.  (Burris Decl. ¶¶ 6-7.)  He has worked closely with Haddad & Sherwin on numerous cases, and states that they are among the best lawyers in the country handling difficult civil rights and police misconduct cases.  (Burris Decl. ¶¶ 13, 14.)  His current hourly rate is $850, and states that the hourly rates requested by the attorneys in this case are well within the hourly rates charged by other attorneys of similar skill, doing comparable work.  (Burris Decl. ¶ 20.)  He also states that the hourly rates requested for the associates and paralegals in this matter are on the low end of the range for similarly qualified attorneys and paralegals.  (Burris Decl. ¶ 20.)

Mr. Sturdevant has been practicing law since 1972.  (Sturdevant Decl., June 24, 2014, ¶ 2.)  He has extensive experience in public interest litigation, including representing consumers and low-income individuals in consumer class actions, employment discrimination cases, environmental litigation, and unfair business practices litigation.  (Sturdevant Decl. ¶¶ 3, 4.)  He states that his 2013 hourly rate was $750, which was approved in October 2013 in *Drake v. John Stewart Co.*, San Francisco Superior Court Case No. CGC-11-507902.  His 2014 rate is $775 per hour.  (Sturdevant Decl. ¶ 9.)  Mr. Sturdevant states that all of the rates claimed here are well within the range of prevailing market rates for attorneys and paralegals of comparable experience and abilities for comparable work in the Bay Area.  (Sturdevant Decl. ¶ 8.)  He also states that Mr. Pearl's $750 rate is below the market rate for comparable attorneys.  (Sturdevant Decl. ¶ 8.)

Mr. Davis has been practicing since 1989.  (Davis Decl., June 18, 2014, ¶ 2.)  He states that his approved billing rate in a state mass tort litigation and related federal multidistrict litigation is

United States District Court
For the Northern District of California

$775 per hour.  (Davis Decl. ¶ 9.)  He states that he is familiar with Mr. Haddad and Ms. Sherwin, and opines that both are extremely knowledgeable about the law governing police misconduct and civil rights cases.  He also states that they each have excellent reputations in the legal community and have achieved excellent results, and that he believes that the fair market value of their legal work is at least $725 per hour for Mr. Haddad and $695 per hour for Ms. Sherwin.  (Davis Decl. ¶ 11.)

Finally, Plaintiff submits a May 15, 2014 order in *Cornell v. City & County of San Francisco*, San Francisco Superior Court No. CGC-11-509240, in which the court granted Haddad & Sherwin's motion for reasonable attorneys' fees under the Bane Act and awarded hourly billing rates for Mr. Haddad, Ms. Sherwin, Ms. Guertin, and Ms. Altomare at the rates requested in this motion.  (Haddad Decl. ¶ 59, Ex. E.)  *See Children's Hosp. & Med. Ctr.*, 97 Cal. App. 4th at 783 (courts consider whether "the hourly rates . . . are within the range of reasonable rates charged by *and judicially awarded* comparable attorneys for comparable work." (emphasis added)).

The court finds that the evidence submitted by Plaintiff demonstrates that the rates requested by the attorneys here are in line with the overall market rate for attorneys of similar abilities and experience in this District.  The PPS Defendants have not challenged any of the evidence presented by Plaintiff in support of the hourly rates, nor have they supported their arguments with evidence of their own regarding legal rates in the community.  They simply argue that the rates are excessive for such a "simple and straight forward [sic] case."  (Defs.' Opp'n 26.)  In light of the evidence presented by Plaintiff and the PPS Defendants' failure to support their position, the court finds that the requested hourly rates are reasonable.  *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (remanding case and instructing court to "presume [] requested rates are reasonable" where moving party submitted evidence supporting rates and opposing party did not support arguments about lower rates with evidence).  The requested rates are also in line with those awarded in this District in recent fee awards.  *See Recouvreur v. Carreon*, 940 F. Supp. 2d 1063, 1070 (N.D. Cal. 2013) (approving $700 hourly rate for public interest lawyer with over 20 years of experience); *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1099-1100 (N.D. Cal. 2010) (holding reasonable $700 hourly rate for lead counsel, civil rights attorney

practicing since 1982; finding support for "a market rate from $380 to &775 per hour for experienced employment and civil rights attorneys in the Northern District" for the years 2006-2009); *see also Prison Legal News v. Schwartzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (holding district court did not abuse its discretion in awarding 2008 hourly rates of $875 for a partner, $700 for an attorney with 23 years of experience, and $425 for a 2003 law graduate).  The court has presided over this case from its inception, and has had the opportunity to evaluate first-hand the work of Plaintiff's counsel.  Counsel has been consistently well-prepared and thorough and has provided high-quality representation of Plaintiff.

However, the court finds that Plaintiff has not submitted sufficient evidence in support of the reasonableness of the $225 hourly rate requested for the two paralegals.  In particular, Plaintiff presents evidence that other California law firms charge up to $300 per hour for "senior" paralegals, but Plaintiff does not present evidence about the years of experience for Haddad & Sherwin's paralegals.  (*See* Pearl Decl. ¶ 12; Sherwin Decl. ¶¶ 9, 10.)  Plaintiff has also presented evidence that courts in this District have recently awarded hourly rates for paralegals under $200 per hour.  (*See* Pearl Decl. ¶ 13.)  Although Haddad & Sherwin requested a $225 hourly rate for its paralegals in *Cornell*, the court only awarded the firm $125 per hour.  (Haddad Decl. Ex. E at 6.)  While the court in *Cornell* did not discuss the reason for reducing the paralegals' rate, Plaintiff has submitted evidence that Haddad & Sherwin billed, and was paid, $200 per hour for paralegals' work in 2011.  (Sherwin Decl. ¶¶ 21, 22.)  The court finds that a reasonable hourly rate for paralegals Breana Montgomery and Claudia Reed is $200 per hour.  *See Davis v. Prison Health Servs.*, No. C 09-2629 SI, 2012 WL 4462520, at *10 (N.D. Cal. Sept. 25, 2012) (finding $180 hourly rate for paralegals "consistent with the prevailing community rates for such services"); *Campbell*, 718 F. Supp. 2d at 1102-03 (awarding $160 per hour for paralegals in 2010).

**b.      Reasonableness of the Hours Expended**

For non-fee motion related work on this case, Plaintiff requests reimbursement for an unadjusted lodestar of $242,746, based on a total of 474.2 attorney hours and 11.8 paralegal hours.  (Pl.'s Mot. Am. App. A.)  For work related to the fee motion, Plaintiff seeks a lodestar of $59,655.50 for a total of 81.6 hours.  The PPS Defendants challenge the total number of hours spent on non-fee

**United States District Court**
For the Northern District of California

1    motion related work as excessive, unnecessary, and unreasonable.  They do not object to the number

2    of hours spent on the fee motion.

3         Where a party challenges the reasonableness of the hours billed, "it is the burden of the

4    challenging party to point to the specific items challenged, with a sufficient argument and citations

5    to the evidence." *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n*, 163 Cal. App. 4th

6    550, 564 (2008).  If the party opposing the motion "cannot come up with specific reasons for

7    reducing the fee request" that are persuasive, the court "should normally grant the award in full" or,

8    at most, impose a ten percent reduction.  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th

9    Cir. 2008).

10        The PPS Defendants first argue that Plaintiff's request should be reduced by 50% for 1) work

11   related to the Oakland Defendants' involvement in the case and 2) block billing.  As to the first

12   argument, the PPS Defendants assert that even though Plaintiff's counsel has cut some hours for

13   work exclusively related to claims against the Oakland Defendants, there are a "significant" number

14   of entries that describe such work which have not been cut.  (Defs.' Opp'n 18-19.)  As Plaintiff's

15   counsel sets out in his declaration, all the time that counsel spent exclusively on claims against the

16   Oakland Defendants was excluded from Plaintiff's request.  (Haddad Decl. ¶¶ 41, 42.)  Thus,

17   counsel eliminated time spent on work that he determined would not have been reasonable to do had

18   Plaintiff only had claims against the PPS Defendants, and had the Oakland Defendants not been

19   parties, excluding 116.9 hours from the lodestar.  (Haddad Decl. ¶ 42.)  The only specific items the

20   PPS Defendants challenge are Plaintiff's counsel's hours spent preparing for and deposing the

21   individual Oakland police officers and attending mediation of the entire case in April 2014.  (Defs.'

22   Opp'n 18-19.)  As to the depositions of the Oakland police officers, this work was not "exclusively"

23   related to Plaintiff's claims against the Oakland Defendants, as the actions of the Oakland police

24   officers bore directly on Plaintiff's Bane Act claim against the PPS Defendants, as discussed above.

25   Regarding the April 2014 mediation, it is not axiomatic that the mediation would have been

26   "significantly shorter" had the Oakland Defendants not participated.  The court has carefully

27   reviewed counsel's billing entries and finds that appropriate deductions have been made for work

28   exclusively related to Plaintiff's claims against the Oakland Defendants.

United States District Court

For the Northern District of California

1    The PPS Defendants also object to block billing in counsel's billing records, arguing that this

2    provides an independent ground for a reduction in the hours claimed based on Plaintiff's counsel's

3    asserted failure to deduct time spent on claims against the Oakland Defendants.  Upon a review of

4    the billing records, the court finds that Plaintiff's counsel's use of block billing is quite limited.

5    Moreover, while block-billing makes it difficult to break down hours on a task-by-task basis, *see*

6    *Bell v. Vista Unified Sch. Dist.*, 82 Cal. App. 4th 672, 689 (2000), it is not inappropriate *per se*.  *See*

7    *Stonebrae, L.P. v. Toll Bros., Inc.*, No. C-08-0221 EMC, 2011 WL 1334444, at *9 (N.D. Cal. Apr. 7,

8    2011) ("[b]lock-billing is a typical practice in this district, and blocked-bills have been found to

9    provide a sufficient basis for calculating a fee award.").  The PPS Defendants do not identify any

10   particular entries to which they object, as is their burden.  The court finds that counsel's time records

11   are adequate to allow the court to determine whether the time spent on particular tasks is reasonable.

12   The PPS Defendants next ask the court to reduce Plaintiff's counsel's hours to account for

13   overstaffing and duplicative work by multiple counsel on the same task, arguing that counsel has

14   made little effort to reduce their time for such work.  As an example, the PPS Defendants object to

15   the hours billed by Ms. Guertin and Mr. Haddad related to Plaintiff's opposition to the PPS

16   Defendants' motion to set aside the default, arguing that the task should have been handled by one

17   associate attorney and taken far fewer hours than the claimed 43.8 hours.  In response, counsel

18   clarifies that the number of hours billed for this task was actually 37.1 hours, and that the vast

19   majority of time was spent by Ms. Guertin (31.5 hours) at a substantially lower billing rate than Mr.

20   Haddad's.  (Haddad Decl. II, ¶ 10.)  Counsel also asserts that this task required significant research

21   because represented defendants "so rarely default."  (Haddad Decl. II ¶ 10.)  While "[c]ollaboration

22   does not necessarily amount to duplication that is not compensable," *Premier Med. Mgmt. Sys., Inc*.,

23   163 Cal. App. 4th at 562, the court finds the total number of hours claimed for this task to be

24   excessive, given that the PPS Defendants' motion to set aside default was relatively straightforward.

25   The court will award compensation for 16 hours of Ms. Guertin's work on this task (reducing her

26   hours by 15.5) and two hours for Mr. Haddad (reducing his hours by 3.6).  Although the PPS

27   Defendants argue that there are "numerous" examples of multiple attorneys billing inflated hours for

28   the same work throughout the billing records, they highlight no other examples.

United States District Court

For the Northern District of California

The PPS Defendants also claim that Plaintiff's attorneys engaged in "excessive conferencing," stating that the billing records reveal over 390 separate entries for meetings, most of which consist of inter-office meetings within Haddad & Sherwin.[4]  They argue that the court should impose a corresponding 10% reduction in the total number of hours.  In response, counsel explains that such meetings describe conferences between attorneys regarding the case, and were necessary to keep each other apprised of work and developments, as well as to plan and strategize throughout discovery and trial preparation.  (Haddad Decl. II ¶ 11.)  Further, the PPS Defendants point to no specific conferencing or meetings that they claim are unreasonable.  Having reviewed the billing records, the court finds that the amount and type of conferencing among the attorneys and paralegals was reasonable and appropriate and finds that no corresponding reduction in hours is necessary.

The PPS Defendants next argue that counsel's hours should be reduced by 10% for multiple attorneys attending appearances and participating in the mediation.  They identify one example of such alleged overbilling: Ms. Guertin's appearance at the April 2014 mediation with Mr. Haddad, for which she billed 6.6 hours and Mr. Haddad billed 7.1 hours.  The PPS Defendants argue that it was unreasonable to have two attorneys from the same office attend, and claim this was standard practice for Plaintiff's counsel, although they do not identify any other objectionable appearances.  Plaintiff's counsel explains that whenever more than one attorney was present for a hearing or an event, it was fully justified by the demands of the task, i.e. to assist lead counsel.  (Haddad Decl. II ¶ 12.)  He also states that his firm wrote off a substantial number of hours billed by Ms. Guertin for certain appearances, including case management conferences and depositions.  (Haddad Decl. II ¶ 12.)  The court finds that the presence of two attorneys for Plaintiff at the mediation was not unreasonable.  As one court in this district has noted, "a team approach to solving the issues is useful during settlement conferences which test counsel's ingenuity and negotiating skills."  *Oberfelder v. City of Petaluma*, No. C-98-1470 MHP, 2002 WL 472308, at *7 (N.D. Cal. Jan. 29, 2002).  In addition, although the PPS Defendants did not identify any other specific appearances they

---

[4]  Defendants do not explain how they arrived at their total of "390 separate entries for meetings" over a two year period.  The wording implies that Defendants counted entries, rather than meetings.  By definition, the number of meetings must be reduced by half at least.

1   challenge, the court agrees with the *Oberfelder* court's observation that "the attendance of more than

2   two attorneys is not per se duplicative."  *Id*. at *7-8 (rejecting arguments that attendance of more

3   than one attorney at depositions, case management conferences, settlement conference, and site

4   inspection was "improper or superfluous").

5          The PPS Defendants next argue that Plaintiff's request should be reduced by 10% for

6   unproductive or unnecessary hours, asserting that counsel unreasonably spent large amounts of time

7   on activities that typically require less time to complete.  Specifically, the PPS Defendants challenge

8   over twenty hours incurred by Ms. Guertin, Mr. Haddad, and Ms. Sherwin to prepare Plaintiff's

9   mediation brief, arguing that this amount is unreasonable as the mediation brief "was essentially a

10  re-hash of Plaintiff's previous Mandatory Settlement Conference Statement from February, 2014,

11  with a few minor revisions."  (Defs.' Opp'n 23.)  In support, they attach copies of Plaintiff's

12  settlement conference statement and mediation statement, ostensibly so the court can compare the

13  two and note their purported similarities.  As discussed above, these documents are stricken from the

14  record and the court does not consider them in connection with this motion.  *See* A.D.R. L.R. 7-5(a),

15  6-12(b).  The court finds that the PPS Defendants have failed to meet their burden to show that

16  Plaintiff's counsel's hours on this task, or on any other tasks other than the opposition to the motion

17  to set aside default (discussed above) were unproductive or unnecessary.

18         The PPS Defendants' final challenge to the number of hours requested by Plaintiff's counsel

19  is that counsel should not be reimbursed for time where attorneys billed time at their regular rates for

20  paralegal or secretarial work.  They argue that these entries are unreasonable both for the amount of

21  time and the hourly rate applied, and ask for a 5% reduction in hours.  The PPS Defendants state that

22  such entries include deposition scheduling, calendaring, and emailing court reporters regarding

23  depositions.  However, they only challenge two specific entries: 0.9 hours on November 14, 2013

24  for Ms. Sherwin to calendar pretrial and trial dates and to email Ms. Guertin and meet with Mr.

25  Haddad, and 0.2 hours on August 15, 2013 for Ms. Guertin for "Scheduling re: defendants' deps."

26  (Defs.' Opp'n 24.)  The court has reviewed the entries.  While the Ninth Circuit has noted that it

27  "simply is not reasonable for a lawyer to bill, at her regular hourly rate, for tasks that a non-attorney

28  employed by her could perform at a much lower cost," *Davis v. City & Cnty. of San Francisco*, 976

F.2d 1536, 1543 (9th Cir. 1992) *opinion vacated in part on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993), it is not clear that a non-attorney could have performed these tasks.  As counsel explains, Ms. Sherwin's time to review and calendar pretrial and trial dates and to separately confer with Mr. Haddad and Ms. Guertin was appropriate considering the importance of meeting deadlines and planning for pretrial and trial preparation given the firm's other pending cases.  (Haddad Decl. II ¶ 14.)  As for Ms. Guertin's time spent scheduling depositions, counsel does not address this entry. As it is not clear from the entry that this reflects work that was appropriate for an attorney to perform, the court reduces Ms. Guertin's compensable time by 0.2 hours.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992) (party seeking fees bears the burden of adequately documenting the hours claimed).   The court overrules the PPS Defendants' remaining objections on this basis.

**2.    Adjusted Lodestar Calculation**

The following table reflects the lodestar adjustments, as discussed above.

| Attorney | Rate | Hours | Fee App. Hrs | Total Fees |
|---|---|---|---|---|
| Michael Haddad | $725 | 129.2 | 31.2 | $116,290.00 |
| Julia Sherwin | $695 | 37.3 | 13.9 | $35,584.00 |
| Richard Pearl | $750 | n/a | 36.5 | $27,375.00 |
| Genevieve Guertin | $400 | 218.6 | n/a | $87,440.00 |
| Gina Altomare | $350 | 59.3 | n/a | $20,755.00 |
| T. Kennedy Helm | $325 | 10.5 | n/a | $3,412.50 |
| Paralegals | $200 | 11.8 | n/a | $2,360.00 |
| | | | total: | $293,216.50 |

The total fees for work on the merits is $233,561.00.  The total fees for work on the fee motion is $59,655.50, for a total of $293,216.50.

**3.    Lodestar Enhancement**

Plaintiff requests that the court apply a 1.3 lodestar enhancement for their work on the merits.  Under California law, the court may adjust the lodestar when the litigation "involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned

22

United States District Court

For the Northern District of California

1   lodestar in order to approximate the fair market rate for such services." *Ketchum*, 24 Cal. 4th at

2   1132.  The party seeking a lodestar enhancement bears the burden of proving the multiplier is

3   warranted.  *Id*. at 1138.

4          Plaintiff argues that an enhancement is warranted for several reasons.  In particular, he

5   argues that this case involved significant financial risk to Haddad & Sherwin.  He claims that civil

6   rights cases against police and security officers performing police functions are inherently difficult

7   and risky, and that Plaintiff faced formidable legal obstacles as he had no independent corroborating

8   witnesses and Defendants had control over both the witnesses and key documents.  In addition,

9   counsel faced a "double contingency" in that only Plaintiff's Bane Act claim permitted fee shifting;

10  therefore, had Plaintiff won his case on other grounds but lost his Bane Act claim, no fees would

11  have been recoverable.  Plaintiff also argues that the preclusion of other employment during the

12  litigation and the excellent results achieved support an enhancement.

13         The PPS Defendants make no arguments in opposition to Plaintiff's request for an

14  enhancement.

15         The court finds that the circumstances of this case warrant a modest enhancement.  Under

16  California law regarding attorneys' fees, "the unadorned lodestar reflects the general local hourly

17  rate for a *fee-bearing case*; it does *not* include any compensation for contingent risk, extraordinary

18  skill, or any other factors a trial court may consider."  *Ketchum*, 24 Cal. 4th at 1138.  In *Ketchum*,

19  the California Supreme Court held that "contingency cases *as a class*" warrant special consideration

20  in terms of fee enhancements, explaining that enhancements may make cases involving enforcement

21  of constitutional rights "economically feasible to competent private attorneys."  *Id*. at 1133.  The

22  court stated that the economic rationale for enhancements in contingency cases has been explained

23  as follows:

24             A contingent fee must be higher than a fee for the same legal services paid as they
              are performed.  The contingent fee compensates the lawyer not only for the legal
25            services he renders but for the loan of those services. The implicit interest rate on
              such a loan is higher because the risk of default (the loss of the case, which cancels
26            the debt of the client to the lawyer) is much higher than that of conventional loans.

27  *Id*. at 1132-33 (citation and quotation marks omitted).  Counsel explains that the financial risk to

28  Haddad & Sherwin was significant, as compensation for more than 486 hours of work and more than

23

1   $19,000 of the firm's money advanced for expenses was at stake.  *See Kranson v. Federal Express*

2   *Corp.*, No. 11-cv-05826-YGR, 2013 WL 6503308, at *12 (N.D. Cal. Dec. 11, 2013) (awarding 1.5

3   multiplier in employment discrimination suit; noting "two years and six months is a significant

4   amount of time to wait to be awarded fees, particularly for a small firm").  Further, Plaintiff's case

5   was a so-called "double contingency," which required proof of Plaintiff's assault, battery, and false

6   arrest and imprisonment claims as well as proof of liability on his Bane Act claim, his sole claim

7   authorizing recovery of legal fees.  *See Bender v. Cnty. of Los Angeles*, 217 Cal. App. 4th 968, 988

8   (2013) (awarding 1.2 multiplier in "double contingency" case involving excessive force and Bane

9   Act claims).

10         The litigation was inherently risky, as Plaintiff had no independent witnesses to corroborate

11   his testimony and Defendants had control over both the witnesses and documentary evidence, and

12   resulted in the vindication of important constitutional rights.  *See Ketchum*, 24 Cal. 4th at 1132

13   ("[t]he purpose of a fee enhancement . . . for contingent risk is to bring the financial incentives for

14   attorneys enforcing important constitutional rights . . . into line with incentives they have to

15   undertake claims for which they are paid on a fee-for-services basis.").  As one court has noted, the

16   "failure to fully compensate for the enormous risk in bringing even a wholly meritorious case would

17   effectively immunize large or politically powerful defendants from being held to answer for

18   constitutional deprivations, resulting in harm to the public."  *Horsford v. Bd. of Trustees of Cal. State*

19   *Univ.*, 132 Cal. App. 4th 359, 400 (2005) (finding abuse of discretion where trial court failed to

20   consider factors for awarding fee enhancement to prevailing plaintiffs in employment discrimination

21   case).  Additionally, the demands of this case, especially as trial approached, precluded other work,

22   "which makes the ultimate risk of not obtaining fees all the greater (since the attorneys must use

23   savings or incur debt to keep their offices afloat and their families fed during the years-long

24   litigation)."  *See id.* at 399; *Ketchum*, 24 Cal. 4th at 1138 (noting that a fee enhancement "is neither

25   unexpected nor fortuitous.  Rather, it is intended to approximate market-level compensation for such

26   services, which typically includes a premium for the risk of nonpayment or delay in payment of

27   attorney fees."); *see also Taylor v. Nabors Drilling USA, LP*, 222 Cal. App. 4th 1228, 1251-52

28   (affirming unspecified multiplier in individual employment discrimination case based upon

contingent risk and extent to which nature of litigation precluded other employment by attorneys). For all the reasons set forth above, the court finds that a 1.1 multiplier is warranted and appropriate in this matter. *See Coles v. City of Oakland*, No. C03-2961 TEH, 2007 WL 39304, at *15-17 (N.D. Cal. Jan. 4, 2007) (awarding Haddad & Sherwin contingent risk multiplier of 1.1 for work on merits and 1.05 multiplier for work on fees for injunctive relief).  Accordingly, the court awards Plaintiff's counsel a total award of $316,572.10, representing $256,917.10 for work on the merits, including a 1.1 multiplier, and $59,655.00 for work on Plaintiff's fee motion.

### IV.  Conclusion

For the foregoing reasons, the court grants in part Plaintiff's motion for attorneys' fees and awards Plaintiff $316,572.10 in fees as to the PPS Defendants.  The PPS Defendants shall make payment in full within thirty days of the date of this order.

IT IS SO ORDERED.

Dated: December 8, 2014



DONNA M. RYU
United States Magistrate Judge